IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| ANNETTE SCOTT, | |
|---|---|
| Plaintiff, | Case No. 4:16-cv-00251-GKF-GBC |
| vs. | (MAGISTRATE JUDGE COHN) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of the Social Security Administration, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |
| Defendant. | |

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL

### I. Procedural Background

On August 7, 2013, Annette Scott ("Plaintiff") filed as a claimant for disability benefits under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1382-1383 ("Act"), with a last insured date of December 31, 2017,[2] and claimed a disability onset date of June 24, 2013. (Administrative Transcript (hereinafter, "Tr."), 95). On December 1, 2014, the administrative law judge ("ALJ") found that Plaintiff was not disabled within the meaning of the Act. (Tr. 92-109). Plaintiff sought review of the unfavorable decision, which the Appeals Council denied on April 15, 2016, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner of the Social Security Administration ("SSA"). (Tr. 1-5).

On May 3, 2016, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal a decision of Defendant denying social security benefits. (Doc. 1). On August 18, 2016,

---

[1] Effective January 23, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of the Social Security Administration ("SSA") and is substituted as defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

[2] Disability insurance benefits ("DIB") are paid to an individual if that individual is disabled by last date that a claimant meets the requirements of being insured. See 42 U.S.C. § 423(a)(1)(A), (c)(1).

Defendant filed an administrative transcript of proceedings. (Doc. 9). On October 20, 2016, Plaintiff filed a brief in support of the appeal. (Doc. 10 ("Pl. Br.")). On December 20, 2016, Defendant filed a brief in response. (Doc. 12 ("Def. Br.")). On January 5, 2017, Plaintiff filed a reply brief. (Doc. 13 ("Reply")).

## II. Background

Plaintiff was born in May 1962 and thus was classified by the regulations as an individual closely approaching advanced age through the date of the ALJ decision. (Tr. 14); 20 C.F.R. § 404.1563(d). Plaintiff alleged disability due to an irregular heart, high blood pressure, and arthritis in the knees. (Tr. 60). Plaintiff completed the fifth grade and stated that it took her eight years of studying through a church in order to obtain a GED in 2009. (Tr. 21, 41-42, 187). Plaintiff never had a driver's license (Tr. 48) and past relevant work included work as an order picker and a home health aide. (Tr. 52).

In a disability report dated August 16, 2013, Plaintiff indicated that she could read English, write more than just her name in English, she was the one who was completing her application, and that she did not take special education classes. (Tr. 185-91). In a function report dated August 29, 2013, the hand written form indicated that Plaintiff could follow written instructions, such as following a recipe, and indicated that Plaintiff completed the eight-page form. (Tr. 208-215). A handwritten work history form indicated that someone other than Plaintiff completed the form. (Tr. 200-207). In a verbal Request for Reconsideration, dated January 16, 2014, Plaintiff stated that she could not read, was very limited in her ability to write, that someone else fills out her paper work and reads her mail to her. (Tr. 118-119). In a hand written letter dated February 27, 2014, Plaintiff indicated that her case manager at Creoks helped her write the letter. (Tr. 227-229). During the October 2014 hearing, Plaintiff had difficulty reading her social security number and her attorney read it for her. (Tr. 13-14). During the October 2014 hearing, Plaintiff testified to not

being able to read well, and always had the help of friends to fill out job applications, with the last time she submitted a job application was twelve years prior to the hearing, and that she got help with completing her social security disability application. (Tr. 14, 24, 41-42).

Earnings reports demonstrate that from 1999 to 2010, Plaintiff met the earning threshold for four quarters of coverage, with the highest annual income totaling $57,715. (Tr. 176).

### III.     Legal Standards and Review of ALJ Decision

To receive disability or supplemental security benefits under the Act, a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A). The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin,

727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's] findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

### A. ALJ's Assessment of Plaintiff's Educational Level

Plaintiff argues the ALJ erred "by failing to discuss [P]laintiff's testimony about her inability to read and by failing to find that [P]laintiff was illiterate." (Pl. Br. at 5-9). However, the issue is whether substantial evidence supports the ALJ's conclusion Plaintiff had an educational level of "at least a high school education" pursuant to sections 404.1564 and 416.964 of the code. (Tr. 104 (citing 20 C.F.R. §§ 404.1564, 416.964)).

An applicant's education level is determined by several factors that would impact the amount of knowledge and skills the person would possess, including "formal schooling or other training which contributes to [an individual's] ability to meet vocational requirements," "past work experience and the kinds of responsibilities [the individual] had when [he or she was] working," and the individual's "daily activities, hobbies, or the results of testing . . . ." 20 C.F.R. §§ 404.1564(a), 416.964(a); accord Castellano v. Colvin, No. 13-CV-02147-RM, 2015 WL 7567728, at *5-7 (D. Colo. Nov. 25, 2015). While the numerical grade level the claimant completes in school may be used to determine the applicant's education, this value may not be reflective of the claimant's educational abilities where that education was "completed many years before [the claimant's] impairment began" or where there is "other evidence to contradict it...." 20 C.F.R. §§ 404.1564(b), 416.964(b); accord Castellano, No. 13-CV-02147-RM, 2015 WL 7567728, at *5-7 ; see also Dollar v. Bowen, 821 F.2d 530, 535 (10th Cir. 1987).

"An applicant's educational level may be roughly approximated as one of several categories based on an evaluation of an applicant's education and past experiences." Castellano, No. 13-cv-02147, 2015 WL 7567728, at *5-7. One such category includes, "illiterate" where the person has an "inability to read or write" and, more specifically, "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1); see also Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir. 1987) ("This definition makes explicit that literacy turns upon the ability to write as well as to read"). "Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). An individual with a "high school education," is considered to have abilities commensurate with "semi-skilled through skilled work." 20 C.F.R. §§ 404.1564(b)(4), 416.964(b)(4).

Essential to Plaintiff's argument is her assumption the ALJ could not rely on the uncontroverted testimony that Plaintiff had a GED because, according to Plaintiff, the "clear implication of the 'church group' helping plaintiff for 8 years to get the GED was that it was a sham in order to help her qualify for a job." (Pl. Br. at 8). However, Plaintiff fails to direct the Court to any evidence in the record where Plaintiff places the ALJ on notice that Plaintiff's obtainment of a valid GED was in dispute and Plaintiff does not direct the Court to any evidence to demonstrate that Plaintiff did not acquire a GED. See e.g., Weaver v. Astrue, 353 F. App'x 151, 154 (10th Cir. 2009) (affirming where "claimant . . . did not raise [the] issue in her administrative hearing . . . , and there was no evidentiary support for this claim in the record").

The undersigned finds the instant case similar to Smith v. Colvin, wherein the court observed:

> there is simply no record evidence that Plaintiff did not get a GED. . . . The arguments of counsel are not evidence. It is for the ALJ to decide questions of fact and to resolve ambiguities in the evidence. Here, he determined Plaintiff has a GED, and the record evidence supports his finding.

Smith v. Colvin, No. 15-cv-9368, 2016 WL 6804927, at *5 (D. Kan. Nov. 17, 2016). Plaintiff's attorney did not elicit testimony regarding whether Plaintiff took the GED examination, Plaintiff's attorney did not allege any intellectual impairment or request for tests of reading ability, and Plaintiff's attorney failed to obtain records confirming that Plaintiff did not obtain a GED in 2009.[3] Therefore, it was reasonable for the ALJ to rely on Plaintiff's repeated representation she obtained a GED in 2009. (Tr. 21, 187). Moreover, the ALJ did not err in omitting any reference to Plaintiff's

---

[3] Plaintiff's attorney failed to address the standardized testing requirement for the GED in California, where Plaintiff testified to have lived during the time she would have obtained the GED, and Plaintiff's attorney failed to supply any documentation verifying the lack of obtaining a GED. See http://www.cde.ca.gov/ta/tg/gd, which directs GED verification inquiries to the following commercial website: https://www.gedtestingservice.com/testers/gedrequest-a-transcript. See generally, Mendez v. Comm'r of Soc. Sec., No. 15-cv-08017, 2017 WL 1194672, at *5 (S.D.N.Y. Feb. 27, 2017), report and recommendation adopted, No. 15-cv-8017, 2017 WL 1194687 (S.D.N.Y. Mar. 30, 2017) (distinguishing between taking the GED and obtaining a GED).

illiteracy testimony, given Plaintiff's testimony regarding illiteracy was not significantly probative in light of her repeated assertion she obtained a GED. See Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (explaining although "an ALJ is not required to discuss every piece of evidence," he must discuss "the evidence supporting his decision . . . uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects").

Plaintiff also cites the SSA's Program Operations Manual System (POMS) DI 25001.001 (17)(a) quoting under the section addressing illiteracy, "[r]egardless of formal education level, this [illiterate category] should be applied to claimants who cannot speak, understand, read, or write a simple message in English such as instructions or inventory lists." POMS DI 25001.001 (17)(a) (effective from Jan. 2014 to Jan. 2015). Courts have generally addressed the import of formal education level as referring to grades completed in primary and secondary education. See e.g., Dollar, 821 F.2d at 535; Beaver v. Colvin, No. CIV-15-277-SPS, 2016 WL 5408157, at *5 (E.D. Ok. Sept. 28, 2016) (noting "a ninth grade level of formal education . . . can be modified where there is evidence that the claimant's actual educational abilities contradict the completed grade level"); Castellano, No. 13-CV-02147-RM, 2015 WL 7567728, at *5-7. Plaintiff does not direct the Court to any case that disregarded obtainment of a G.E.D. in favor of subjective allegations of illiteracy.

Moreover, subsection (e) of Plaintiff's cited POMS stated ALJs are also to consider "[r]ecent education that allows a claimant to do a particular semi-skilled or skilled job." POMS DI 25001.001 (17)(e). Plaintiff completed her GED in 2009 (Tr. 187) to "help her qualify for a job" (Pl. Br. at 8) and was working a semi-skilled job as home health aide from 1998 to 2013 (Tr. 52, 65) and as a home health aide, she earned $43,362.45 in 2008, $54,065.49 in 2009, and $57,715.33 in 2010. (Tr. 176). The Court agrees with Defendant that Plaintiff's previous work permits an inference Plaintiff needed to read and write in order to carry out the job duties of her prior relevant

work. See Castellano, No. 13-CV-02147-RM, 2015 WL 7567728, at *5-7 (finding no error in ALJ's conclusion claimant was not illiterate where claimant had a sixth grade education, previous work experience that necessitated an ability to read, and conflicting evidence in the record). Plaintiff is responsible for establishing her past relevant work was accomplished in a manner that did not require reading.

Additionally, a remand would not result in the ALJ concluding Plaintiff was illiterate. See, e.g., Davison v. Colvin, 596 F. App'x 675, 679-80 (10th Cir. 2014) (affirming a case where Plaintiff claimed illiteracy and there were conflicting evidence regarding his ability to fill out forms); Beaver, No. 15-cv-277, 2016 WL 5408157, at *5 (rejecting claim of illiteracy based on Plaintiff's own subjective testimony where, in other records, Plaintiff indicated he could write). There are instances in the record where Plaintiff represented she was completing the forms and she could read and write (Tr. 185-186, 200-215). The Function Report changes between cursive and printed answers and indicates Plaintiff completed the form (Tr. 208-215), while Plaintiff's work history form indicates another person completed the form on her behalf (Tr. 200-07). In February 2014, Plaintiff submitted a handwritten letter stating, "[m]y case manager at Creoks helped me write this letter." (Tr. 227-29). In the medical record, it was noted Plaintiff had "been keeping a good log of blood pressures" and "brought great blood pressure logs." (Tr. 332, 35). Handwritten blood pressure logs indicated Plaintiff's morning and evening blood pressure from June 1, 2014, to October 9, 2014. (Tr. 430-439). Without any assertion Plaintiff did not fill the forms as she indicated, it was reasonable for the ALJ to presume Plaintiff wrote the letter and forms that bear her signature, and where Plaintiff indicated she filled out the form. See Beaver, No. 15-cv-277, 2016 WL 5408157, at *5.

## B. RFC Standing and Walking Limitations

Plaintiff argues the ALJ erred by failing to acknowledge Plaintiff's testimony about her leg and knee limitations and "never mentioned or discussed the objective findings on physical examination of the OSU physicians concerning 'guarded' Lachman's and 'positive' McMurray's signs for the left knee." (Pl. Br. at 9-12). Plaintiff further asserts the ALJ erred in giving great weight to the agency non-examining physicians who made their opinions prior to the OSU examination entries. (Pl. Br. at 9-12).

From February 2014 to October 2014, Plaintiff received treatment from OSU Medical Health Center. (Tr. 322-429). During an emergency visit on February 12, 2014, Dr. Schiesel examined Plaintiff and noted she had a normal gait and no leg pain or swelling. (Tr. 337). On February 19, 2014, Plaintiff sought treatment from Dr. Maxey for crepitus, decreased mobility, joint tenderness and limping that had begun one month earlier. (Tr. 328-31). Dr. Maxey noted Plaintiff did not demonstrate any joint instability, numbness or weakness. (Tr. 328). Dr. Maxey noted a guarded Lachman's test and a positive McMurray's test. (Tr. 328). On March 6, 2014, Dr. Maxey noted Plaintiff did not do everything that was recommended to alleviate her knee pain; however, Plaintiff reported that her "knee pain [was] slowly getting better" and Plaintiff did not believe it warranted an x-ray. (Tr. 332). Upon examination, Dr. Maxey noted Plaintiff's knees were "normal." (Tr. 334). On August 5, 2014, the musculoskeletal examination indicated visual overview of all four extremities were normal. (Tr. 415).

Plaintiff lists instances in the record illustrating subjective complaints of knee and leg symptoms and some of the observations made by OSU physicians. (Pl. Br. at 9-12). However, the evidence is not significantly probative, as it does not lend support to the possibility of the ALJ concluding Plaintiff met the requirements for disability benefits. The ALJ met the requirements of Social Security Ruling 96-8p. The undersigned finds no error in the ALJ's omission of Plaintiff's

testimony or omitting specific reference to the OSU examination observations of a guarded Lachman's and positive McMurray's signs for the left knee given: 1) the ALJ discussed the OSU records and testimony (Tr. 100); 2) the ALJ noted the OSU record (Tr. 101) where Plaintiff stated her knee pain started a month prior and it improved since the last visit; 3) the brevity of the flare-up with the knee and leg symptoms would not meet the durational requirement of 42 U.S.C. § 423(d)(1)(A) and 20 C.F.R. § 404.1509 which require that the medically determinable impairment "has lasted or can be expected to last for a continuous period of not less than 12 months;" and 4) notwithstanding the observations cited by Plaintiff, there was no significant alteration in treatment to address any alleged knee and leg impairment and the ALJ noted that during the treatment at OSU, there was either no pain medication noted or only aspirin (Tr. 102-03). See 20 C.F.R. §§ 404.1529(c), 416.929(c) (enumerating factors an ALJ considers in evaluating the "intensity and persistence" of Plaintiff's alleged knee and leg impairment).

"Ultimately, the outcome of the case depends on the demonstration of the functional limitations of the disease or impairment. . . ." Mills v. Colvin, No. 14-cv-03481, 2016 WL 759159, at *5 (D. Colo. Feb. 26, 2016) (quoting McKean v. Colvin, No. 1:13-cv-2585, 2015 WL 1201388, at *7 (M.D. Pa. Mar. 16, 2015)). In determining whether an individual is disabled under the Act, probative evidence is that which demonstrates "the most [a person] can still do despite [his or her] limitations." See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (describing criteria for formulating RFC); Kruse v. Astrue, 436 F. App'x 879, 885 (10th Cir. 2011). Objective medical evidence such as reduced joint motion, muscle spasm, sensory deficit or motor disruption "is a useful indicator to assist [an adjudicator] in making reasonable conclusions about the intensity and persistence of [an individual's] symptoms and the effect those symptoms, such as pain, may have on [an individual's] ability to work." 20 C.F.R. § 416.929; see also SSR 96-7p (July 2, 1996) (valid through March 15, 2016 and superseded by SSR 16-3p).

To evaluate the "intensity and persistence" of Plaintiff's alleged impairment, sections 404.1529(c), 416.929(c) enumerate the factors that the ALJ is to consider in totality. There is a distinction between what an adjudicator must "consider" and what the adjudicator must "discuss" in the disability determination. See SSR 96-8p; see also SSR 06-03p (explaining that to "consider" means to provide explanation sufficient for a "subsequent reviewer to follow the adjudicator's reasoning"). Under the heading "Evidence Considered," Ruling 96-8p enumerates several types of evidence to "consider," while under the heading "Narrative Discussion Requirements," there are narrower requirements of what an ALJ should "discuss." See SSR 96-8p. While an ALJ must "consider" all of the evidence, the ALJ needs only to discuss sufficient evidence to support each conclusion, resolve any inconsistencies in the evidence as a whole and, set forth a logical explanation of the effects of the symptoms, on the individual's ability to work. See SSR 96-8p. Plaintiff fails to demonstrate how observations of a guarded Lachman's and positive McMurray's signs contradict the RFC or medical opinions regarding Plaintiff's ability to work, where the knee pain improved since the examination and there was no significant alteration in treatment or pain medications. The ALJ is not required to recite everything in the evidence; rather, the ALJ must discuss the relevant evidence that demonstrates Plaintiff's ability to work and "significantly" probative evidence to the contrary. See SSR 96-8p.

The ALJ extensively reviewed and accurately summarized the totality of the relevant evidence through the date of the decision. (Tr. 99-103). Moreover, the ALJ reasonably relied on Dr. Krishnamurthi's October 2013 consultative evaluation (Tr. 312-19), Dr. Baldwin's November 2013 non-examining opinion (Tr. 68-71), and Dr. Post' January 2014 non-examining opinion (Tr. 75, 80-81). See 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (effective from August 24, 2012 to March 26, 2017) (non-examining consultants are "highly qualified ... medical specialists who are also experts in Social Security disability evaluation"). Drs. Baldwin and Post reviewed the

evidence up to November 2013 and January 2014, respectively, and opined the severity of Plaintiff's limitations were still compatible with the ability to work. (Tr. 68-71, 75, 80-81).

Plaintiff does not direct the Court to evidence demonstrating significant deterioration of symptoms that would meet the durational requirement following the opinions of Drs. Baldwin and Post; as such a showing would lend support to the possibility of an ALJ reaching a different conclusion. See, e.g., 42 U.S.C. § 423(d)(1)(A) (twelve month durational requirement); 20 C.F.R. § 404.1509 (twelve month durational requirement); Decker v. Chater, 86 F.3d 953, 954-55 (10th Cir. 1996) (discussing the relevance of significant deterioration following evidence demonstrating Plaintiff's ability to work); Boswell v. Astrue, 450 F. App'x 776, 778 (10th Cir. 2011) (affirming decision where ALJ correctly observed there was no objective evidence Plaintiff's condition "significantly worsened"); Tarpley v. Colvin, 601 F. App'x 641, 644 (10th Cir. 2015) (rejecting claimant's argument the ALJ gave too much weight to the state agency physician's opinion, who did not review later treating physician opinions, concluding "nothing in the later medical records . . . [demonstrates] a material change in [the plaintiff's] condition would render [the state agency physician's] opinion stale."). In this case, as the ALJ thoroughly reviewed the record and properly characterized Plaintiff's symptoms and functional limitations, substantial evidence supports the ALJ's conclusions.

## C.  Credibility

Plaintiff asserts the ALJ erred in his assessment of Plaintiff's credibility. (Pl. Br. at 13-15). Where a medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a credibility finding on the claimant's subjective statements. SSR 96-7p (effective from July 1996 to March 2016 and superseded by SSR 16-3p). The credibility finding must be based on a consideration of the entire

case record, considering several factors in totality. SSR 96-7p; 20 C.F.R. §§ 404.1529, 416.929 (version effective from June 2011 to March 2017). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995); see also 20 C.F.R. §§ 404.1529, 416.929. This Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)).

Plaintiff does not address the totality of the evidence, for example: (1) records indicating that Plaintiff's current medications often did not include any pain medication, records indicating that Plaintiff treated her pain with aspirin; (2) repeated examinations wherein physicians observed that Plaintiff had a normal gait, nearly full range of motion, was able to move off of the examination table without difficulty, and walked without the need for ambulatory devices; and (3) expert medical opinions which support the ALJ's conclusion.

With regards to pain medication: (1) on October 30, 2013, Plaintiff's listed medications included Vasotec, hydralazine, simvastin, and Maxalt (Tr. 312); (2) on June 11, 2014, Plaintiff's listed medications included: simvastatin, Coreg, amlodipine, and Lisinopril (Tr. 424); (3) on August 5, 2014, Plaintiff's listed medications included: aspirin, fluoxetine, Remeron, simvastatin, Coreg, amlodipine, and Lisinopril (Tr. 414); and (4) on October 7, 2014, Plaintiff's listed medications were: aspirin, fluoxetine, Remeron, simvastatin, Coreg, amlodipine, and Lisinopril (Tr. 427). The record supports the ALJ's observations of "Bayer chewable aspirin, Excedrin Extra

Strength Aspirin, Fluoxetine, and Seroquel XR. There are no prescription drugs for relief of pain noted on either medication list." (Tr. 103).

With regard to examinations and medical opinions: (1) on October 30, 2013, Dr. Krishnamurthi's examination findings regarding Plaintiff's leg and knee impairments generally were unremarkable and noted although Plaintiff demonstrated "slightly reduced" range of motion in the left knee and pain with movement of the left ankle and walked with a slight limp on the left leg due to pain in the left knee, her gait was stable (Tr. 313); (2) on November 12, 2013, Dr. Baldwin reviewed the medical record and opined Plaintiff was able to stand and/or walk for a total of about six hours in an eight-hour day, Plaintiff's knee range of motion was limited slightly, but is well within the functional range (Tr. 71); (3) on January 30, 2014, state agency physician, Dr. Post affirmed Dr. Baldwin's November 2013 findings (Tr. 75, 80-81); (4) on February 12, 2014, Dr. Schiesel examined Plaintiff and noted she had a normal gait and no leg pain or swelling (Tr. 337); (5) on February 19, 2014, Dr. Maxey noted Plaintiff did not demonstrate any joint instability, numbness or weakness and noted a guarded Lachman's test and a positive McMurray's test. (Tr. 328); (6) on March 6, 2014, Plaintiff reported her "knee pain [was] slowly getting better" and Dr. Maxey noted Plaintiff's knees were "normal" (Tr. 332-34); and (7) on August 5, 2014, the musculoskeletal examination indicated visual overview of all four extremities were normal. (Tr. 415).

The ALJ extensively discussed the material evidence throughout the decision and the ALJ's references to the records indicated the ALJ considered the evidence Plaintiff claims was omitted. (Tr. 99-103). The evidence not explicitly discussed was not significantly probative as such evidence does not demand a different conclusion than the one the ALJ reached and if it were error, it would be harmless. See Mays v. Colvin, 739 F.3d 569, 579 (10th Cir. 2014) (concluding where "the agency consultants' opinions proved inconsequential when the ALJ limited [claimant]

to sedentary work . . . the alleged failure to discuss the consultants' opinions would constitute harmless error"); Daniels v. Apfel, 154 F.3d 1129, 1136 (10th Cir. 1998) (responding to argument the ALJ's "did not link his conclusions to specific evidence," the Court concluded "while the ALJ's assessment of pain and credibility could be better and more thorough, the ALJ did not commit reversible error").

Plaintiff fails to meet her burden in demonstrating how the omission would change the outcome of the case. See Vititoe v. Colvin, 549 F. App'x 723, 729-30 (10th Cir. 2013) (citing Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.")). Based on the foregoing, substantial evidence supports the ALJ's credibility determination. See SSR 96-7p; 20 C.F.R. §§ 404.1529, 416.929.

**D.      Post Hoc**

Defendant argues the ALJ's decision is supported by substantial evidence because Plaintiff's past relevant work indicates the necessity to read. (Def. Br. at 4-5). In the reply brief, Plaintiff states this argument amounts to a "post-hoc justification" and cites to Haga v. Astrue. (Reply Br. at 4); Haga v. Astrue, 482 F.3d 1205 (10th Cir. 2007) (citing SEC v. Chenery Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943)). Over the years, the Supreme Court has reiterated the Chenery prohibition against post hoc rationalizations. See e.g., Talk Am., Inc. v. Michigan Bell Tel. Co., 564 U.S. 50, 64, 131 S. Ct. 2254, 2263, 180 L. Ed. 2d 96 (2011).

As discussed above, the undersigned finds no error in the ALJ's lack of discussion of Plaintiff's testimony regarding illiteracy. Even if the ALJ erred in failing to discuss Plaintiff's testimony regarding illiteracy, the undersigned finds such error as harmless and a remand would

not change the outcome of the case based on the record as it currently stands.[4] Notwithstanding the statutory difference between the VA and SSA for judicial review,[5] the Supreme Court in Shinseki cites with approval an appellate social security disability case (Nelson v. Apfel, 131 F.3d 1228, 1236 (7th Cir. 1997)), in support of correlating review of administrative proceedings with the same harmless error standard in civil cases. See Shinseki, 556 U.S. at 409-10, 129 S. Ct. at 1705-06. Similarly, the Tenth Circuit has applied the principle of harmless error to administrative review in general, citing to St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs., 309 F.3d 680, 691 (10th Cir. 2002) which cites to Section 706 harmless error rule of the APA. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004); see also, Vititoe v. Colvin, 549 F. App'x 723, 730 (10th Cir. 2013) (citing Shinseki v. Sanders for harmless error). The Court in Allen observed, "we have specifically applied [harmless error] in social security disability cases, though not always by

---

[4] Furthermore, the Court may not remand for the ALJ to consider any "additional evidence" unless Plaintiff shows good cause for failing to procure the evidence before the ALJ decision. 42 U.S.C. § 405(g) ("Sentence Six"). Sentence Six does not limit the phrase "additional evidence," so it should not be construed to allow a "back door" around Sentence Six requirements because Plaintiff fails to frame the issue as one involving Sentence Six and the need to consider new evidence regarding Plaintiff's GED. See Snyder v. Colvin, No. 4:16-cv-00261, 2017 WL 1732031, at *8 (M.D. Pa. May 3, 2017), report and recommendation adopted sub nom. Snyder v. Berryhill, No. 4:16-CV-0261, 2017 WL 2798320 (M.D. Pa. June 28, 2017).

[5] While, "[l]egislative history confirms that Congress intended the Veterans Court 'prejudicial error' statute to 'incorporate a reference' to the APA's approach," (Shinseki, 556 U.S. at 406–07), similar language regarding prejudicial error is lacking from the Social Security Act's judicial review section 405(g). Compare 38 U.S.C. § 7261(b)(2) (requiring judicial review of veteran benefits decisions to "take due account of the rule of prejudicial error") with 5 U.S.C. § 706 (APA's judicial review requirement that "the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error") and with 42 U.S.C. § 405(g) (SSA's judicial review without mention of prejudicial error that mirrors APA). For further comparison, 42 U.S.C. § 1395 within the social security statutory scheme, incorporates the APA prejudicial error provision for medical providers bringing actions against the agency. See also John Balko & Assocs. v. Sebelius, No. 12-cv-0572, 2012 WL 6738246, at *4–5 (W.D. Pa. Dec. 28, 2012), aff'd sub nom. John Balko & Assocs., Inc. v. Sec'y U.S. Dep't of Health & Human Servs., 555 F. App'x 188 (3d Cir. 2014) (concluding that § 706 should not be read *in pari materia* with the 405(g) in order to give effect to congressional intent to specify different sections of the SSA where § 706 would apply).

name and without settling on a definitive characterization of its precise contours and range of application in this somewhat unique, nonadversarial setting." Allen, 357 F.3d at 1145.[6]

Often when defendants cite to evidence in the record that supports the ALJ's decision, such is to enable the court's assessment of the legal issue of substantial evidence. The provision against post hoc rationalizations should not be applied so narrowly that it requires a court to ignore evidence in the record demonstrating that substantial evidence supports the ALJ's findings of fact where a plaintiff's allegation of error proves to be harmless in light of the record in totality. See, e.g., Martinez v. Barnhart, 444 F.3d 1201, 1208 (10th Cir. 2006); Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) ("our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'"); Allen, 357 F.3d at 1145.

In exploring the tension between harmless error and the Chenery post hoc doctrine, the Tenth Circuit in Allen reasoned:

> Two considerations counsel a cautious, if not skeptical, reception to this idea. First, if too liberally embraced, it could obscure the important institutional boundary preserved by Drapeau's admonition that courts avoid usurping the administrative tribunal's responsibility to find the facts. Second, to the extent a harmless-error

---

[6] An alternative basis for harmless error may stem from the substantial evidence standard of 405(g) and cases which approximate the substantial evidence standard with the directed verdict standard. The substantial evidence standard is met if such evidence would "justify, if the trial were to a jury, a refusal to direct a verdict." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S. Ct. 456 (1951); Forest Guardians v. U.S. Forest Serv., 495 F.3d 1162, 1170 (10th Cir. 2007) ("Agency decisions must be based on 'substantial evidence,' which is evidence sufficient to 'justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion to be drawn is one of fact.'") An "error is harmless 'if the evidence meets the standard for a directed verdict.'" Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 98 (1st Cir. 2014) (citing Segrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56, 64 (1st Cir. 2000)); cf. Lusby v. T.G. & Y. Stores, Inc., 796 F.2d 1307, 1310 (10th Cir. 1986) (finding an improper instruction, did not mandate reversal because there was "substantial evidence" supporting the correct theory of liability, and thus was harmless error); Wonnacott v. Denver & R.G.W.R. Co., 187 F.2d 607, 608 (10th Cir. 1951) (concluding where an adversary is entitled to a directed verdict, the unsuccessful party has no right to a reversal based on harmless error).

determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action recognized in SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943) and its progeny.

With these caveats, it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

Allen, 357 F.3d at 1145. In other words, to determine whether a post hoc argument is permissible, a court should determine if the ALJ's decision indicates consideration of the evidence relevant to the appeal to assess whether the alleged "post hoc" justification can be inferred from the decision. See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based"); Keyes-Zachary v. Astrue, 695 F.3d 1156, 1163 (10th Cir. 2012) (finding harmless error where the ALJ discussed the opinion without assigning weight and the opinion would not advance the plaintiff's claim of disability); Allen, 357 F.3d at 1145; Arroyo v. Apfel, 202 F.3d 281 (10th Cir. 1999) (concluding the ALJ's "conclusions on the [Psychiatric Review Technique (PRT)] were supported by substantial evidence and any error made by the ALJ in failing to explicitly relate the evidence in the record to his conclusions on the PRT is harmless"); see also discussion supra regarding the distinction between what an ALJ must "consider" versus what an ALJ must "discuss."

The Court concludes its consideration of Plaintiff's prior work history in addition to Plaintiff's representations she obtained a G.E.D. were permissible as part of its examination of the entire record to determine whether substantial evidence supported the ALJ's determination of Plaintiff's educational level. As the discussion regarding consideration of prior work history was in the context of Plaintiff's argument the ALJ should not have relied on Plaintiff's formal

education, such is not a post hoc rationale, but rather a discussion as to why Plaintiff's legal argument is unpersuasive given its failure to address Plaintiff's G.E.D. Moreover, even if the ALJ erred in failing to discuss Plaintiff's testimony regarding illiteracy, such is harmless given substantial evidence supports the ALJ's ultimate determination that Plaintiff's educational level was at high school equivalent and the ALJ discussed Plaintiff's obtainment of a G.E.D.

## V. Recommendation

For the reasons set forth above, the undersigned **RECOMMENDS** to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

## VI. Notice Regarding Objection

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within fourteen days, no later than September 8, 2017.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b) (3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b) (1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 Ph.D. 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

SUBMITTED on August 25, 2017.

/s/ Gerald B. Cohn
**Gerald B. Cohn**
**United States Magistrate Judge**