# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANNETTE SCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-CV-251-GKF-GBC |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the court is the Report and Recommendation of United States Magistrate Judge Gerald B. Cohn on the judicial review of a decision of the Commissioner of the Social Security Administration denying disability benefits to Annette Scott ("Plaintiff"). [Doc. No. 15]. The Magistrate Judge recommends that the Commissioner's decision be affirmed. For the reasons set forth below, the court agrees, overrules the objections, and adopts the Report and Recommendation.

### I.     Procedural Background

On August 7, 2013, Plaintiff applied for disability insurance benefits and supplemental security income based upon alleged disability beginning June 24, 2013. The Social Security Administration ("SSA") denied Plaintiff's application both initially and on reconsideration. As a result, Plaintiff requested and received a hearing before Administrative Law Judge ("ALJ") B.D. Crutchfield. On December 1, 2014, the ALJ issued a written decision finding that Plaintiff was not disabled and denying benefits. [Doc. No. 9]. Because the SSA Appeals Council denied review of that decision, the ALJ's denial of benefits represents the Commissioner's final decision

for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481. After U.S. Magistrate Judge Gerald B. Cohn recommended that the Commissioner's decision be affirmed [Doc. No. 15], Plaintiff filed objections on September 8, 2017 [Doc. No. 16].

**II.     Standard of Review**

Pursuant to Fed. R. Civ. P. 72(b)(3), the court "must determine *de novo* any part of [a] magistrate judge's disposition . . . properly objected to. The district judge may accept, reject, or modify the recommended dispositions; receive further evidence; or return the matter . . . with instructions." In the disability benefits context, *de novo* review is limited to determining "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). On review, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quotation marks and citation omitted).

**III.    Analysis**

Plaintiff objects to the ALJ's written decision on the basis that the ALJ failed to discuss Plaintiff's testimony about her inability to read and failed to find that she was illiterate. Plaintiff contends that these failures infected the ALJ's Step 5 analysis. [Doc. No. 16, p. 6]. The court disagrees.

*First*, Plaintiff argues that the ALJ erred by failing to discuss Plaintiff's testimony about her inability to read. Although "[a]n ALJ is not required to discuss every piece of evidence," she "must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996); *see also* 42 U.S.C. 405(b)(1) (directing that any unfavorable determination "shall

2

contain a statement of the case . . . setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based").

The evidence in the record regarding Plaintiff's education is not entirely consistent. On the one hand, there is strong evidence that Plaintiff is literate. She obtained her G.E.D. [Doc. No. 9, pp. 24, 190], worked in previous jobs requiring basic reading and writing skills [Doc. No. 9, pp. 107, 190], indicated in several places that she was able to read and write [Doc. No. 9, pp. 188, 204, 216], and seems to have personally signed and written several documents [Doc. No. 9, pp. 131–32, 150, 433–42]. On the other hand, Plaintiff seizes upon several items in the record to argue that she is illiterate—Plaintiff was unable to read her social security card during the hearing [Doc. No. 9, pp. 16–17], testified before the ALJ that she was illiterate and unable to read or write for herself [Doc. No. 9, pp. 16–17 (stating that she was illiterate), 44–45 (stating that she "can't read good")], obtained her G.E.D. only through an eight year church program [Doc. No. 9, pp. 24, 44–45], and received assistance filling out and writing certain documents in the record [Doc. No. 9, pp. 24, 45, 121–22, 210, 230–32 (stating that Plaintiff's case manager "helped [her] write [the] letter")]. However, the record as a whole indicates that Plaintiff's difficulties reading and writing were more likely due to poor eyesight than to poor literacy. [Doc. No. 9, pp. 17 (stating that Plaintiff has never worn glasses), 32 (listing her vision as a sign of disability), 37 (elaborating that she "can't see little things"), 44 (explaining that she "couldn't see" the numbers on her social security card), 216 (reporting that she "can't see too good")].

The ALJ's written decision does not discuss any of the above evidence, concluding simply that Plaintiff "has at least a high school education and is able to communicate in English." [Doc. No. 9, p. 107]. Although unsatisfying, this is not reversible error. Plaintiff's evidence of illiteracy is not substantially probative given the strength of the evidence in favor of

concluding that she is literate.  Further, even if Plaintiff's evidence was substantially probative, the ALJ's failure to discuss it was harmless given that discussion of it would not change the outcome of the case on remand.

The record does not controvert the fact that Plaintiff worked in two professions requiring basic reading and writing skills, or that she obtained a GED in 2009.  *See Smith v. Colvin*, No. 15-cv-9368-JWL, 2016 WL 6804927, at *5 (D. Kan. Nov. 17, 2016) (stating "there is simply no evidence in the record that Plaintiff did not get a GED . . . [and] [t]he arguments of counsel are not evidence").  Prior work experience and recent education are appropriate factors for an ALJ to consider when determining education level.  *Castellano v. Colvin*, No. 13-CV-02147-RM, 2015 WL 7567728, at *5–7 (finding no error in ALJ's conclusion that plaintiff was not illiterate, despite statements by plaintiff that he could not read, where plaintiff had a tenth grade education and prior work experience requiring basic reading and writing skills); POMS DI 2500.001 (17)(e) (listing as relevant "recent education that provides for direct entry into skilled or semiskilled work").  Additionally, multiple documents in the record were personally written or filled out by Plaintiff.  [Doc. No. 9, pp. 131–32, 150, 433–42].  Plaintiff's primary explanation for her difficulty reading—poor vision—further undermines the probative value of her evidence. [Doc. No. 9, pp. 37, 44, 216].  Because of the strong evidence that Plaintiff was literate, any evidence to the contrary was simply not substantially probative.  *Vititoe v. Colvin*, 549 Fed. App'x. 723, 729 (10th Cir. 2013) (holding a medical opinion to be "not significantly probative" where the opinion was "contrary to other substantial record evidence").

Regardless, discussion of Plaintiff's evidence of illiteracy would not change the outcome of the case on remand.  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Vititoe*, 549 Fed. App'x. at 730 (quoting *Shinseki v.*

4

*Sanders*, 556 U.S. 396, 409 (2009)). Plaintiff attempts to meet this burden by arguing that the ALJ's failure to discuss the evidence of illiteracy harmed Plaintiff, because if the ALJ would have concluded that she was illiterate then Plaintiff would have qualified for disability. [Doc. No. 16, pp. 17–19]. However, this argument fails because Plaintiff mistakenly assumes that discussion of the evidence would have caused the ALJ to conclude that she was illiterate. Such a conclusion is unlikely. *Davison v. Colvin*, 596 F. App'x 675, 679–80 (10th Cir. 2014) (concluding that "conflicting evidence concerning [plaintiff's] ability to fill out certain forms . . . was insufficient to suggest a reasonable possibility that a severe impairment exists"); *See Beaver v. Colvin*, No. CIV-15-277-SPS, 2016 WL 5408157, at *5 (E.D. Ok. Sept. 28, 2016) (rejecting plaintiff's claim of illiteracy based primarily on plaintiff's subjective testimony, where plaintiff's testimony and documents in the record indicated that plaintiff could read ). As a result, the court concludes that even if the ALJ erred by failing to discuss Plaintiff's testimony about her inability to read, such error was harmless.

*Second*, Plaintiff argues that the ALJ erred by failing to find that Plaintiff was illiterate. An ALJ's findings must be supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (characterizing substantial evidence as "more than a scintilla, but less than a preponderance"). As discussed above, the evidence is strong that Plaintiff is literate. She worked for a number of years in jobs requiring basic reading and writing skills, obtained her GED in 2009, and personally wrote or filled out certain documents in the record. As a result, the court holds that substantial evidence supported the ALJ's finding that Plaintiff was literate, and it was not error for the ALJ to so conclude.

WHEREFORE, the court overrules Plaintiff's objections [Doc. No. 16], and adopts the Magistrate Judge's Report and Recommendation [Doc. No. 15].

IT IS SO ORDERED this 14th day of September, 2017.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT